## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA RUTH, | ) | CASE NO. 5:08CV2689 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| UNIFUND CCR PARTNERS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the court are separate motions to dismiss pursuant to Rule 12(b)(6) filed by (1) defendants Unifund CCR Partners ("Unifund"); ZB Limited Partnership ("ZBLP"); Credit Card Receivables Fund, Inc.("CCRF"); John Doe 1; John Doe 2; and John Doe 3; (collectively, the "Unifund Defendants"); and National Check Bureau, Inc.'s ("NCB"); and (2) individual defendant David Rosenberg ("Rosenberg").[1]

**I. Factual and Procedural History**

On June 14, 2005, NCB, an Ohio corporation, filed a civil complaint against Pamela Ruth ("Ruth" or "Plaintiff") in municipal court in Cuyahoga Falls, Ohio (the "NCB Complaint"). (Compl., Doc. No. 1-2, ¶ 35.)[2] In its complaint, NCB sought payment of a credit card debt allegedly owed by Ruth, along with accrued interest and court costs. (Ex. D to Pl.'s

---

[1] Unifund, ZBLP, CCRF, the Does, NCB, and Rosenberg are referred to collectively as "Defendants."

[2] Unless otherwise noted, all references and citations to the complaint are to Plaintiff's complaint, filed in Summit County Common Pleas Court on October 3, 2008. The complaint (and all of its exhibits) are attached as Exhibit 1 to Defendants' Notice of Removal. (*See* Doc. No. 1-2.)

Compl., Doc. No. 1-2 at 37.) Attached to the NCB Complaint was a single exhibit purporting to be the "Citibank Card Agreement" upon which the debt was based. (*Id*. at 40.) NCB eventually dismissed its suit against Ruth on December 19, 2006, one business day prior to the scheduled trial. (Compl. ¶ 39.) According to Ruth, NCB's voluntary dismissal of the complaint was precipitated by its failure to produce documents to substantiate its claims, as well as its general failure to comply with its discovery obligations. (Compl. ¶¶ 37–38)

Subsequently, Unifund[3] filed a civil complaint against Ruth in Cuyahoga Falls, Ohio, Municipal Court on July 2, 2007 (the "Unifund Complaint"). (Compl. ¶40.) Unifund sought to collect the same debt described in the NCB Complaint, plus accrued interest and court costs. (*See* Compl., Exhs. C & D, Doc. No. 1-2, at 27-29, 37-39) The only exhibit attached to the Unifund Complaint was the same "Citibank Card Agreement" previously submitted as an exhibit to the NCB Complaint. (*Id*. at 31-36, 40-45.)

According to Ruth, Unifund first registered its trade name, "Unifund CCR Partners," with the Ohio Secretary of State on October 30, 2003; this registration was later renewed on August 13, 2008, while Unifund's lawsuit against Ruth was pending. (Compl., Ex. A, Doc. No. 1-2, at 25.) Unifund's principle place of business is located in Cincinnati, Hamilton County, Ohio. (Compl. ¶ 23.) When the Unifund Complaint was filed on July 2, 2007, Unifund had not yet filed a partnership name certificate in Hamilton County as required by Ohio Rev. Code § 1777.02.[4] (Compl. ¶¶ 24, 40) On December 12, 2007, during the pendency of its lawsuit

---

[3] According to Ruth, Unifund's general partners are CCRF and ZBLP. (Compl. ¶ 7.) Rosenberg is the president and sole shareholder of CCRF, and the unidentified John Does are the general partners of ZBLP. (Compl. ¶¶ 8-9.) Unifund, CCRF, ZBLP, Rosenberg are referred to collectively as the "Unifund Defendants" which, along with NCB, are referred to collectively as "Defendants".

[4] Ohio Rev. Code § 1777.02 provides, in relevant part, that "every partnership transacting business in this state under a fictitious name [. . .] shall file for record, with the county recorder of the county in which its principal office

against Ruth, Unifund filed a certificate with the Hamilton County Recorder purporting to comply with Ohio Rev. Code § 1777.02. (Compl. ¶ 25)

Ruth responded to the Unifund Complaint by filing an Answer and Counterclaim on November 13, 2007. (Compl., Ex. E, Doc. No. 1-2, at 46-50.) Ruth's counterclaim alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 *et seq.* ("OCSPA"). (*Id.*) Ruth claims that during the litigation of the Unifund Complaint, Unifund (like NCB before it) failed to comply with its discovery obligations. (Compl. ¶ 53.) Following NCB's example closely, Unifund attempted to voluntarily dismiss its complaint against Ruth without prejudice on the scheduled trial date of September 23, 2008. (Compl. ¶ 55–62.) The state court held a hearing on Unifund's purported voluntary dismissal, and ordered that the "without prejudice" language be stricken from the dismissal entry. The Court thereafter signed the order dismissing the Unifund Complaint. (*Id.*) Ruth likewise voluntarily dismissed her counterclaims against Unifund on September 5, 2008. (Defs.' Mot. to Dismiss, Ex. 1, Doc. No. 8-2.)

On October 3, 2008, Ruth filed the instant suit against the Unifund Defendants, NCB, and Rosenberg in the Summit County Court of Common Pleas. (Pl.'s Compl.) Ruth's complaint alleges violations of (1) the FDCPA (Counts One and Ten); (2) the OCSPA (Counts Two and Eleven); (3) the Ohio Deceptive Trade Practices Act, (the "ODTPA"), Ohio Revised Code § 4165.01 *et seq.*; (4) the Ohio Pattern of Corrupt Activities Act, (the "OPCA"), Ohio Revised Code § 2923.31 *et seq.*; (5) common law fraud (Counts Four, Five, and Twelve); (6)

---

or place of business is situated [. . .] a certificate to be recorded and indexed by the recorder, stating the names in full of all the members of the partnership and their places of residence."

3

abuse of process (Count Eight); (7) malicious prosecution (Count Nine); (8) defamation (Count Thirteen); and (9) civil conspiracy (Counts Six and Fourteen).

Defendants timely[5] removed the action to this Court on November 13, 2008, invoking federal jurisdiction under 28 U.S.C. § 1331 (federal question) based upon Ruth's assertion of claims under the FDCPA, as well as supplemental jurisdiction relating to Ruth's various state law causes of action, 28 U.S.C. § 1337. (Notice of Removal, Doc. No. 1.)

Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) (Doc. No. 8), while Rosenberg filed a separate motion presenting certain arguments in support of dismissal particular to the claims asserted against him as an individual. (Doc. No. 7.) Plaintiff filed responses in opposition to both motions (Doc. Nos. 10 & 11), and Defendants and Rosenberg filed separate replies. (Doc. Nos. 12 & 13.)   Plaintiff subsequently filed a motion for leave to submit a sur-reply to address certain "misrepresentations" allegedly contained in Defendants' reply briefs. (Doc. No. 14.) This prompted a concession by Defendants' counsel concerning the date of service, as well as further discussion of issues relating to the timeliness of Defendants' motion. (Doc. No. 15.) Plaintiff then filed a reply addressing Defendants' legal arguments. (Doc. No. 16.) This exchange was helpful to the Court in deciding the issues raised by the motions to dismiss, and the Court has considered all arguments presented in the briefing relative to Plaintiff's sur-reply. For that reason, Plaintiff's motion for leave to file the sur-reply is hereby granted. The briefing is now complete and the matter is ripe for review.

## II. Law & Analysis

---

[5] The parties agree that at least some of the defendants were served on October 15, 2008. The case was removed on November 13, 2008, within the statutory thirty-day removal period provided by 28 U.S.C. § 1446 (b).

### A. Timeliness of Motions to Dismiss

Ruth argues at the outset that the motions to dismiss are untimely and cannot be considered because Defendants' answers were due in state court on November 12, 2008, one day before the Notice of Removal was filed. Ruth contends that under state procedural rules, Defendants' failure to move or plead in response to the complaint by the November 12, 2008 deadline resulted in deemed admissions of all the allegations, Ohio R. Civ. P. 8(D), which Plaintiff argues was the "law of the case" prior to Defendants' Notice of Removal.

Plaintiff's argument is unpersuasive. The cases she cites stand for the unremarkable proposition that after a default judgment is entered against a defendant, the allegations of the complaint are deemed admitted. *See Bingham v. Slabach*, Nos. 20008-CA-0085, 2008 CA-0086, 2008 WL 4712593, at *4 (Ohio Ct. App. 5th Dist. Oct. 27, 2008) (citing *Sokol v. Spigiel*, No. 05CA008839, 2006 WL 2466554, at *3 (Ohio Ct. App. 9th Dist. Aug. 28, 2006)). They do not support a finding that a failure to file a responsive pleading on the twenty-eighth day after being served results in deemed admissions of all the allegations in the complaint by operation of law at the end of the twenty-eighth day, without any action by the plaintiff.[6]

In this case, Ruth did not take any affirmative steps to obtain a default against Defendants. The case was timely removed within the thirty-day window provided by statute. *See* 28 U.S.C. § 1446 (b). In such cases, the Federal Rules of Civil Procedure specifically address the defendant's time for filing an answer: "A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these

---

[6] Moreover, the rule on which Plaintiff relies, Ohio R. Civ. P. 8(D), is a state procedural rule of dubious applicability in this federal proceeding. *See Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965) (federal courts apply on-point Federal Rules of Civil Procedure instead of state procedural practices).

periods: [. . .] (C) 5 days after the notice of removal is filed." Fed. R. Civ. P. 81(c)(2)(C). Once Defendants filed their Notice of Removal on November 13, 2008, they had until November 20, 2008 to move or plead in response to the complaint.[7] The motions now before the Court were filed November 14, 2008, and are therefore timely, and the defenses raised therein are properly presented. Because Defendants timely responded to the complaint by filing motions to dismiss, their time to file an answer is tolled until the Court resolves the motions. Fed. R. Civ. P. 12(a)(4). Accordingly, since their answers are not yet due, Defendants have not admitted the allegations of the complaint.

### B. Standard of Review

When reviewing a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993)). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *First Am. Title Co. v. DeVaugh,* 480 F.3d 438, 444 (6th Cir. 2007) (quoting *S.E. Texas Inns, Inc. v. Prime Hospitality Corp.,* 462 F.3d 666, 671-72 (6th Cir. 2006)).

---

[7] Intermediate Saturdays and Sundays are excluded from the calculation when the period of time is less than eleven days. Fed. R. Civ. P. 6(a)(2).

When evaluating each claim the court may not assume that a litigant can prove facts that have not been alleged, or that the defending party has violated laws in ways that the litigant has not alleged.  *Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir. 1996) (citations omitted). Nevertheless, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of a factfinder." *Twombly*, 550 U.S. at 563 n.8 (2007).

In determining whether to grant a Rule 12(b)(6) motion, the court  "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### C. FDCPA Claims

Ruth asserts federal claims against Defendants based upon alleged violations of the FDCPA. These provide the sole basis for federal jurisdiction in this matter. Defendants contend that all the FDCPA claims are subject to dismissal because they are time-barred pursuant to the one-year statute of limitations applicable to FDCPA claims. 15 U.S.C. § 1692k(d).[8]

Ruth alleges that Defendants violated the FDCPA (1) by filing the Unifund Complaint based upon a debt she contends was fraudulent and without first conducting an adequate investigation; (2) by making false,  misleading, or unfounded representations and using false documents in connection with efforts to collect the allegedly invalid debt via the municipal

---

[8] The statute provides that "[a]n action to enforce any liability created by this subchapter may be brought [. . .] within one year from the date on which the violation occurs."

7

court lawsuits (i.e., the NCB and Unifund Complaints); (3) by seeking to recover interest and costs in the municipal court collection actions; (4) by engaging in a sham transfer of the purported debt from NCB to Unifund to facilitate further allegedly improper collection efforts; and (5) by filing the Unifund Complaint at a time when Unifund lacked the legal capacity to do so because it had failed to file the partnership name certificate required by Ohio Rev. Code § 1777.02.[9] The first three of these charges all relate to the underlying collection litigation. The fourth and fifth allegations are at least arguably separate and independent events. Thus, Plaintiff's FDCPA allegations focus on one of four things: (1) the filing and litigation of the Unifund Complaint; (2) the filing and litigation of the NCB Complaint; (3) the transfer of the alleged credit card debt from NCB to Unifund; and (4) the filing of the Unifund Complaint without legal capacity to sue in Ohio. Evaluation of Defendants' statute of limitations arguments must, therefore, focus on these four events, which form the basis for the alleged violations.

Where FDCPA claims are premised upon allegations of improperly suing upon a fraudulent or invalid debt in underlying debt collection litigation, courts are split as to when the statute of limitations begins to run. Some hold that such claims accrue upon the filing of the underlying collection action, *see Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), while others use the date the purported debtor was served with the complaint. *See Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002). The Sixth Circuit has never addressed the issue. In this case, however, it makes no difference whether the limitations period began to run upon filing or

---

[9] In a section of the complaint describing her purported "class" FDCPA claim, Ruth alleges that Defendants also violated the statute by "reporting inaccurate credit information, as to the illegally filed lawsuits, which they knew or should have known was false." The complaint, however, contains no specific facts alleging that Defendants actually did this to Ruth. Specifically, the complaint contains no allegations indicating that any defendant ever reported information about Ruth's credit to anyone. Thus, Ruth's complaint fails to properly raise any claim concerning the improper reporting of credit information, and she therefore lacks standing to assert any such claim, either individually or on behalf of a class.

service because, under either formulation of the law, Ruth's claims stemming from both the Unifund and NCB Complaints are time-barred. Specifically, the Unifund Complaint was filed on July 2, 2007. (Compl. ¶ 40.) Although the date of service is not precisely clear from the record, Ruth requested leave to plead on August 29, 2007, and filed an answer on September 19, 2007. (Defs.' Mot. to Dismiss, Ex. 1, Doc. No. 8-2.) The record therefore clearly indicates that Ruth was served with the complaint not later than September 19, 2007. Thus, whether measured from the date the Unifund Complaint was filed or served, all of Ruth's FDCPA claims based thereon are time-barred because Ruth did not commence this lawsuit until October 3, 2008, more than a year after her claims accrued and outside the one-year limitations period.

The same is true of all claims relating to the NCB Complaint. That suit was filed all the way back in 2005, and was concluded in 2006, when NCB voluntarily dismissed the case. Because Ruth waited until October 2008 to file this suit challenging the propriety and validity of the NCB Complaint and NCB's actions in connection therewith, her FDCPA claims relating to such conduct are time-barred.

Ruth's claims premised upon the transfer of the collection account by NCB to Unifund are also subject to dismissal based upon the expiration of the statute of limitations. The allegedly illegal assignment of the debt took place at some point prior to July 2, 2007 – when Unifund's attorneys submitted an affidavit indicating that Unifund had received the account by assignment from NCB. Ruth allowed more than a year to elapse before bringing this suit alleging FDCPA violations based upon that assignment and, as a consequence, such claims are barred by the statute of limitations.

9

Finally, assuming arguendo that Plaintiff's allegation that Unifund sued her without legal capacity to file suit in Ohio states a separately cognizable FDCPA violation, the date of that violation must be the date the suit was filed (or the date it was served). As explained above in connection with her claims arising from the substance of the Unifund Complaint, claims accruing at that time are time-barred.[10]

Ruth raises no legitimate dispute relative to the foregoing statute of limitations analysis, but argues that her FDCPA claims nevertheless remain viable because they (1) are preserved by Ohio Rev. Code § 2305.19; (2) are subject to equitable tolling; (3) relate back to the counterclaim filed in the municipal court action on November 13, 2007; and/or (4) are at least partially timely because Unifund committed continuing violations by maintaining its collection action through December 2007 while lacking legal capacity to sue in Ohio.

**1.Ohio Rev. Code § 2305.19.**

Ruth argues that her FDCPA claims against Unifund (with the exception of the claim that Unifund filed the July 2, 2007 suit when it lacked the legal capacity to do so, which she acknowledges was not asserted therein), are substantially identical to those contained in the counterclaim she filed on November 13, 2007 in response to the Unifund Complaint. Ruth voluntarily dismissed that counterclaim on September 5, 2008, but now maintains that because the FDCPA claims set forth in her counterclaim were substantially similar to those she asserts in this action, the present claims are saved by operation of Ohio Rev. Code § 2305.19, which she

---

[10] Plaintiff asserts that the legal capacity claim constitutes a "continuing violation" that extended long enough to avoid the statute of limitations bar. The Court addresses this argument separately in section II.C.4 of this memorandum opinion.

contends provided her a year from the date of the voluntary dismissal to re-file the claims contained in her original counterclaim.

Ohio Rev. Code § 2305.19, Ohio's savings statute, provides, in pertinent part, that "[i]n any action [. . . ] if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff [. . .] may commence a new action within one year after the date of reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later." Ohio Rev. Code § 2305.19(A). Where a timely filed action is dismissed "otherwise than on the merits" and the statute of limitations expires in the interim, § 2305.19(A) allows the plaintiff an additional year from the date of the dismissal to re-file the complaint. *See, e.g., Greenstreet v. Bickers*, 97 Ohio App. 3d 610, 613 (8th Dist. 1994). There is no dispute that Plaintiff's voluntary dismissal of her counterclaim on September 5, 2008 constitutes a "failure otherwise than upon the merits" under the statute and that, if § 2305.19(A) applies, the re-filed FDCPA claims are timely because they were re-filed within the savings statute's one-year allowance.

The general rule is that where (as here) the plaintiff's claim arises under federal law, and the federal statute in question contains its own statute of limitation, state tolling provisions like Ohio's savings statute do not halt the limitations period. *See Higginbotham v. Ohio Dep't of Mental Health*, 412 F. Supp. 2d 806, 811-12 (S.D. Ohio 2005); *Parrish v. HBO & Co.*, 85 F. Supp. 2d 792, 797-98 (S.D. Ohio 1999). The United States Supreme Court expressly considered and rejected the use of Ohio Rev. Code § 2305.19 to rescue an otherwise untimely claim under the Federal Employers' Liability Act ("FELA"). *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424 (1965). In that case, the plaintiff brought a FELA claim in Ohio state court, and it

was later dismissed for improper venue. *Id*. at 425. The plaintiff re-filed the action in federal district court after the expiration of the FELA's internal statute of limitations, the district court dismissed the suit on that basis, and the Sixth Circuit affirmed. *Id*. The Supreme Court rejected the plaintiff's argument in favor of applying Ohio's savings statute, concluding that "[t]he incorporation of variant state saving statutes would defeat the aim of a federal limitation provision designed to produce national uniformity." *Id*. at 433. Notwithstanding this conclusion, however, the Supreme Court reversed the lower court decisions and remanded the case, holding that

> when a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit. We believe that the interests of uniformity embodied in the Act are best served by holding that this rule, tolling the statute, applies in all States regardless of whether or not a State has a 'saving' statute.

*Id*. at 434-35. The Court's reasoning was essentially twofold. It concluded that accepting the defendant's argument against tolling in the case of a dismissal for improper venue would create non-uniform and unjust results, as a plaintiff filing a timely FELA action in federal court that was later dismissed for improper venue would not be barred by the running of the limitation period, while the same plaintiff filing suit in state court would be so barred. Such a result would directly contravene Congress's declared purpose in enacting the federal limitation provision of achieving national uniformity. *Id*. at 434. Moreover, the Court concluded that rejecting the plaintiff's claim as time-barred under such circumstances would improperly discourage the filing of FELA actions in certain state courts, in contravention of Congressional intent where "Congress, in providing for concurrent state and federal court jurisdiction and prohibiting

removal of FELA cases to federal courts, has sought to protect the plaintiff's right to bring an FELA action in a state court." *Id.*

Consonant with *Burnett*'s reasoning concerning the Ohio savings statute, the Sixth Circuit has refused to apply state savings statutes to revive claims under Title VII and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Johnson v. Ry. Exp. Agency, Inc.*, 489 F.2d 525, 530 (6th Cir. 1973), *reh'g denied*, (6th Cir. 1974); *aff'd*, 421 U.S. 454 (1975) (Title VII); *Davis v. Smith's Transfer, Inc.*, 841 F.2d 139, 140 (6th Cir. 1988) (LMRA); *see also Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002) (federal flood insurance claims); *Gatlin v. Mo. Pacific R.R. Co.*, 631 F.2d 551, 554 (8th Cir. 1980) (Railway Labor Act).

This case is not, however, a simple matter of following the Sixth Circuit's decisions in *Johnson* and *Davis* because, unlike claims under the LMRA and Title VII, the federal courts do not have exclusive jurisdiction over FDCPA claims. Rather, (as was the case in *Burnett*) the state courts possess concurrent subject-matter jurisdiction over FDCPA claims, and Ruth properly presented her claims to the state court by filing her counterclaim. *Burnett* is the seminal case in this area, and while it held that Ohio Rev. Code § 2305.19(A) did not apply to the plaintiff's FELA claim, the Supreme Court nevertheless applied equitable tolling to revive the untimely federal action because it concluded that "when enacting the FELA, Congress intended to toll the statute of limitations during the pendency of a substantively proper suit in state court." *Gallo v. United States*, 499 F. Supp. 2d 697 (E.D. Va. 2007) (citing *Burnett*, 380 U.S. at 437). Thus, while the Court finds § 2305.19(A) inapplicable pursuant to the analysis in

*Burnett*, it is necessary to consider Plaintiff's more general request for equitable tolling in light of the Supreme Court's overall analysis in that case.

### 2. Equitable Tolling

Equitable tolling permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity. *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999); *EEOC v. Ky. State Police Dep't*, 80 F.3d 1086, 1094-95 (6th Cir. 1996). "Equitable tolling stops the running of the statute of limitations in light of established equitable considerations." *New Castle County v. Halliburton Bus. Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997). Federal courts typically extend equitable relief of this kind only sparingly, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 453, 457 (1990), and application of equitable tolling is only appropriate in rare and exceptional circumstances. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). According to the Supreme Court, equitable tolling is permissible "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 458 (footnotes and citation omitted). The party seeking to benefit from equitable tolling bears the burden of proving the propriety of its application. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003); *Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997) (citing *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993)).

14

Although the Supreme Court's *Burnett* decision established an exception to the general aversion to equitable tolling in cases involving federal claims with specific federal statutes of limitation, courts apply that exception very narrowly. In *Burnett*, the state court was properly vested with jurisdiction over the plaintiff's federal claim, but ultimately dismissed the suit because venue was improper. The Supreme Court applied equitable tolling where the case was subsequently re-filed in federal court outside the limitations period. Courts interpreting *Burnett* limit its application to cases where the timely initial suit was dismissed based upon improper venue. *See Kelley v. CSX Transp., Inc.*, No. 2:04CV137, 2006 WL 952216, at *6 (W.D. Pa. Apr. 12, 2006); *Jones v. Saxon Mortgage, Inc.*, 980 F. Supp. 842, 848 (E.D. Va. 1997) ("*Saxon Mortgage*"). Indeed, in both the *Kelley* and *Saxon Mortgage* cases, district courts specifically rejected the argument (upon which Plaintiff relies here) that a voluntary dismissal without prejudice served to suspend the statute of limitations. *Kelley*, 2006 WL 952216, at *6; *Saxon Mortgage*, 980 F. Supp. at 848.

The district court decision in *Saxon Mortgage* is particularly illustrative. There, the plaintiff filed a Truth in Lending Act ("TILA") claim against the defendant. TILA, like the FDCPA, is a federal statute over which state courts have concurrent jurisdiction. *See R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 184 (1st Cir. 2006) (citing 15 U.S.C. § 1640(e)) (TILA); *Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 943 (N.D. Ill. 2005) (FDCPA). The plaintiff in *Saxon Mortgage* later voluntarily dismissed the state court action. 980 F. Supp. at 844. After the applicable federal statute of limitation expired, the plaintiff re-filed the suit in federal court, asserting the same TILA claims that were the subject of the previous state court action. Seeking to avoid dismissal on statute of limitation grounds, the plaintiff argued that

Case: 5:08-cv-02689-SL  Doc #: 17  Filed:  03/06/09  16 of 25.  PageID #: 255

equitable tolling was appropriate under *Burnett*. *Id*. at 847. The district court spurned this contention, finding *Burnett* distinguishable because the plaintiff's case was not dismissed for improper venue but by virtue of his own voluntary dismissal, and that, "[f]urthermore, unlike *Burnett*, Jones could have litigated his action in the state forum which he initially selected. His failure to move quickly and deliberately to prosecute his rights is an insurmountable obstacle to his assertion that the Court should lend the assistance of equity to permit the tardy pursuit of those claims here." *Id*. at 848.

This case is analogous to *Kelley* and *Saxon Mortgage*.[11] Plaintiff filed her suit in a state court that was competent to adjudicate her FDCPA claims. She could have, but did not, litigate the case in the state forum. Instead, she voluntarily dismissed her claims, but failed to consider the effect that action might have on the limitations period. When she re-filed the case, the statute of limitations relative to her federal claims had expired. Because this case is indistinguishable from other similar federal cases, and Plaintiff has not provided any contrary authority, the Court follows those decisions in finding no basis for applying equitable tolling to Plaintiff's FDCPA claims based upon her voluntary dismissal of the state court counterclaim.

In arguing for equitable tolling, Plaintiff relies exclusively upon *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 799 (S.D. Ohio 2006). The decision in *Foster* was based upon the Sixth Circuit's decision in *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984). The opinion in *Jones* discussed equitable tolling in a case involving fraudulent concealment. There, "it was the alleged fraudulent concealment by [the defendant] which

---

[11] The Court notes that in *Jones*, the plaintiff re-filed the TILA claims once in state court before filing in federal court. The district court's analysis did not rely upon this fact in any way, and the Court perceives no rationale for creating a distinction between the two cases on this basis.

prevented [the plaintiffs] from discovering the TILA violation." 747 F.2d at 1042. Consequently, the court held that the statute of limitations on the plaintiff's Truth in Lending Act claim did not begin to run until the plaintiff "discover[ed] or had reasonable opportunity to discover the fraud involving the complained of TILA violation." This conclusion was based largely on the unassailable maxim that "no man may take advantage of his own wrong[.]" *Id.* (citing *Insurance Co. v. Wilkinson*, 80 U.S. (13 Wall.) 222, 233 (1871)). In reliance upon *Jones*, the district court in *Foster* concluded (without analysis) that equitable tolling was appropriate, and went on to make a factual determination that the defendants failed to satisfy their burden of proving that the plaintiffs' claims were time-barred. *Foster*, 463 F. Supp. 2d at 800.

        Plaintiff's reliance upon *Foster* is misplaced. The decision in *Foster* is premised entirely upon *Jones*, which is inapposite, as the instant case does not involve allegations of fraudulent concealment or any other circumstances indicating that Plaintiff was induced by Defendants' action into delaying the exercise of her rights. Plaintiff was sued by Unifund (and previously by NCB) in state court collection actions she claims were based upon a fraudulently obtained or invalid debt. As previously discussed, FDCPA causes of action arising out of such allegations accrue on the date of the violation (which is either the date the collection suit was filed or the date it was served). With perhaps one exception,[12] Plaintiff cannot claim that Defendants fraudulently concealed facts that would have prompted her to sue them earlier, had she only been aware of the violations.[13] To the contrary, Plaintiff actually commenced a timely

---

[12] This exception is discussed immediately below, in the succeeding paragraph.

[13] To the extent Plaintiff attempts to make such an argument (apart from the lack of capacity claim), it is without foundation. While she maintains that "in the prior case, Unifund engaged in discovery abuse to conceal facts relevant to the claims in this Complaint," her claims based upon the filing of the Unifund Complaint had by then already accrued. Moreover, Plaintiff provides no authority for the proposition that indeterminate "discovery abuses" constitute an independent FDCPA violation that would have its own accrual date.

suit against Unifund by filing her counterclaim, only to voluntarily dismiss it later. Fraudulent concealment is, therefore, not at issue.[14]

The only conceivable exception to this analysis is Ruth's argument that Defendants "have made no showing about when plaintiff discovered (or had a reasonable opportunity to discover) Unifund's lack of legal capacity." (Pl.'s Opp'n to Defs.' Mot. to Dismiss, at 6.) This argument misapprehends Plaintiff's burden of proof. Because Plaintiff is seeking equitable tolling, she bears the burden of proving entitlement to its application. To turn this argument into a valid basis for applying the doctrine, Plaintiff must show that she was somehow tricked or manipulated by Defendants' misconduct into allowing the filing deadline to pass. *Irwin*, 498 U.S. at 458. While Defendants did not affirmatively alert Ruth to any defects in their required state filings, the record bears no indication that Defendants actively concealed evidence relative to Unifund's legal capacity to sue. Plaintiff alleges that Unifund lacked such capacity because it completely failed to file a partnership name certificate with the Hamilton County Recorder. As Defendants aptly point out, whether or not Unifund had made such a filing was readily ascertainable from a public records search. Plaintiff has not established that Defendants did anything to prevent her from finding the information on which her lack of capacity claim was based, or to otherwise mislead her into sleeping on her rights. Accordingly, the Court finds Plaintiff's arguments regarding equitable tolling unconvincing.

This conclusion is in line with the well-established rule that "a dismissal without prejudice does not operate as an adjudication upon the merits, and thus leaves the situation the

---

[14] Furthermore, direct reliance upon *Foster* does not aid Plaintiff, since the district court there relied exclusively upon *Jones* without conducting an independent factual analysis. *See Foster*, 463 F. Supp. 2d at 800 ("For the same reasons the court permitted equitable tolling of the plaintiffs' TILA claims in *Jones*, this Court finds equitable tolling appropriate here.")

same as if suit had never been brought." *Dupree v. Jefferson*, 666 F.2d 606, 611 (D.C. Cir. 1981); *see also Kington v. United States*, 396 F.2d 9, 10 (6th Cir. 1968). "In effect, therefore, there was nothing to suspend the operation of the limitation period. Thus [. . .] 'a party cannot deduct from the period of limitations the time during which the action [. . .] dismissed without prejudice was pending.'" *Dupree*, 666 F.2d at 611 (quoting *Boner v. Ribicoff*, 304 F.2d 427, 428 (6th Cir. 1962)). Plaintiff's voluntary dismissal of her state court counterclaim without prejudice does not entitle her to equitable tolling, and she has otherwise failed to meet her burden of establishing that this is the rare and extraordinary case warranting application of the doctrine.

### 3. Relation Back

Seeking to avoid dismissal on the basis of the expired statute of limitations, Plaintiff argues that the FDCPA claims originally asserted in her state court counterclaim were "based on the use of false documents filed in support of the [Unifund] Complaint and on misrepresentations as to the character, amount and legal status of the alleged debt in the Complaint." (Pl.'s Opp'n to Mot. to Dismiss, Doc. No. 11, at 4.) Ruth argues that the only new FDCPA claim asserted in this action is her contention that Unifund sued her when it lacked legal capacity to do so. She asserts that this lack of legal capacity claim arises out of the same conduct, transaction, or occurrence as the original counterclaim, and therefore relates back to the original counterclaim pursuant to Rule 15(c)(1)(B).

The relation back doctrine, as enacted in Rule 15, has no application here. Federal Rule of Civil Procedure 15(c) governs the question of whether an *amended* complaint is allowed to "relate back" to the date that the *original* complaint was filed. Under Rule 15, an "amendment of a pleading relates back to the date of the original pleading when [. . .] the amendment asserts a

claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). This case does not involve any pleading amendment. The only complaint filed in this case is the original one initiating the lawsuit. (Doc. No. 1-2.) Instead, Plaintiff attempts to use the doctrine to relate her original complaint in this action back to the counterclaim she filed in a different case. Plaintiff provides no authority for this position, nor could she, as it is an impermissible use of the doctrine. "The relation back doctrine of Federal Rule of Civil Procedure 15(c) does not apply to claims that are pending in separate cases." *Spann v. Cmty. Bank of N. Va.*, No. 03 C 7022, 2004 WL 691785, at *7 (N.D. Ill. Mar. 30, 2004) (citing *Bailey v. N. Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 (7th Cir. 1990); *see also Scott v. Woods*, No. 08-11276, 2008 WL 5381478, at *3 (E.D. Mich. Dec. 23, 2008) (citations omitted) (refusing to apply the relation back doctrine to a subsequent habeas petition where the initial petition was dismissed because there is no pleading to which it can relate back); *Jones v. United States*, 304 F.3d 1035, 1042 (11th Cir. 2002) (relation back limited to amendments made in the same case as the original filing, not in a separate case). Under the circumstances presented, relation back simply does not apply.

### 4. Continuing Violation

With respect to her lack of legal capacity claim, Plaintiff asserts that Unifund lacked the legal capacity to sue and maintain lawsuits at least until December 11, 2007 (because on December 12, 2007, Unifund filed the Partnership Name Certificate with the Hamilton County Recorder), yet it initiated suit against Plaintiff on July 2, 2007, and maintained that suit against her through December 11, 2007, all at a time when it admittedly had not filed the partnership name certificate.

As explained previously, where the alleged violation is bringing suit against a party without the legal capacity to do so, the accrual date for such a claim is either when the suit was filed or when it was served upon the defendant, as that is when the violation occurred. Because Ruth's FDCPA claims are time-barred if measured from either of those dates, she argues that maintaining the lawsuit against her without legal capacity to sue constituted a continuing violation. She claims that during the lawsuit, Unifund served her with discovery requests and filed a proof of service, and argues that each of these communications constituted a repeated misrepresentation of Unifund's capacity to sue. Plaintiff is thus raising one of two arguments: either that (1) every day Unifund's lawsuit remained pending against her at a time when Unifund allegedly lacked legal capacity to sue represented a continuing FDCPA violation; or (2) alternatively, that every filing or active litigation event occurring in connection with the administration of the Unifund Complaint constituted a new violation.

Not all courts agree that the continuing violation doctrine applies in FDCPA cases.[15] *See Wilhelm v. Credico, Inc.*, 455 F. Supp. 2d 1006, 1009 (D.N.D. 2006) (collecting cases). If applicable, the doctrine provides that the statute of limitations does not begin to run on a continuing wrong until the wrong has been concluded. *Matthews v. Capital One Bank*, 2008 WL 4724277, at *3 (S.D. Ind. Oct. 24, 2008). "The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely [. . .] and the entire course of conduct is at issue." *Joseph v. J.J. MacIntyre Cos.*, 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003).

---

[15] Finding no merit in Plaintiff's argument that her lack of legal capacity claim represents a continuing wrong, the Court expresses no opinion as to whether the doctrine applies as a matter of law.

Plaintiff's continuing violation argument focuses on her lack of legal capacity claim. But rather than alleging a repeated pattern of conduct by Defendants, Plaintiff contends that Unifund's filing of suit without legal capacity, and then mere maintenance of that suit (and performance of common litigation tasks in connection therewith), without remedying its lack of legal capacity, constitutes a continuing violation – such that the filing of the suit was one violation, and the maintenance of the suit, independent of any other specific action by Defendants, was another. Similar contentions have been rejected repeatedly by other courts, and this Court finds Plaintiff's argument equally spurious. "The course of litigation is not, in itself, a 'continuing violation' of the FDCPA." *Schaffhauser v. Burton Neil & Assocs.*, No. 1:05-CV-02075, 2008 WL 857523, at *2 (M.D. Pa. Mar. 27, 2008) (citations omitted). "For conduct during litigation to be actionable, a plaintiff must allege [. . .] that the conduct is a violation of the FDCPA independent of the act of filing suit." *Id.* (citing *Nutter v. Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007). Assuming arguendo that the filing of suit was an actionable FDCPA violation, Plaintiff certainly has not alleged any facts or provided any authority suggesting that it was yet another violation for Unifund to maintain the suit, or to request discovery during the litigation. Having reviewed the relevant authorities, the Court is convinced that it was not. [16] *See Calka v. Kucker, Kraus & Bruh*, *LLP*, No. 98 Civ. 0990(RWS),

---

[16] The illegitimacy of Plaintiff's argument that the maintenance of suit was one long continuing violation is exposed by Plaintiff's suggested application. As late as December 11, 2007, Unifund had not even attempted to file its Partnership Name Certificate. At that time, its lawsuit against Ruth in municipal court remained pending. Plaintiff posits, therefore, that this was a violation independent of the initial filing of the suit, and suggests an accrual date for this claim of December 11, 2007 – which, conveniently enough for Plaintiff, lies within the one-year limitations period. But to accept this argument, the Court would have to hold that a new violation occurred every day that went by without Unifund filing the certificate. For instance, what if, instead of filing the Partnership Name Certificate on December 12, 2007, Unifund filed it on November 12, 2007? Under Plaintiff's analysis, a violation would have occurred on November 11, 2007. This would also achieve Plaintiff's desired result, since that date also falls within the limitations period. But what if Unifund filed the certificate on September 12, 2007? Then Plaintiff would have to argue that the violation occurred on September 11, 2007, which does Plaintiff no good because the claim based upon

1998 WL 437151, at *3 (S.D.N.Y. Aug. 3, 1998) (rejecting the plaintiff's contention that prosecution of a collection lawsuit, and all the proceedings therein, including the filing of an amended complaint and a motion for summary judgment, constituted continuing violations and holding that all such claims accrued on the date the suit was filed); *Camacho v. Nat'l Credit Adjustment Agency*, 2007 WL 760416, at *2 (E.D. Wash. Mar. 8, 2007) (refusing to apply continuing wrong doctrine to allegations that the defendants mailed the plaintiffs a notice of dishonor, filed suit in state court, served them with the summons and complaint, sent a collection letter, and telephoned to demand payment). Consequently, the Court finds that Plaintiff's FDCPA claim based upon Unifund's alleged lack of capacity is not a continuing violation. It accrued either at the time the complaint was filed or upon perfection of service, and therefore, like Plaintiff's other FDCPA claims, is time-barred.

Finding all of Plaintiff's efforts to avoid the statute of limitations bar to her FDCPA claims to be without merit, those claims (Counts One and Ten) are dismissed.[17]

---

that violation would be time-barred. It would be nonsensical to adopt such an analysis since there is simply no new conduct accompanying Plaintiff's supposed "continuing violation."

[17] Although Plaintiff's complaint purports to allege FDCPA claims on behalf of a similarly situated class, no motion for class certification has been filed. Accordingly, the Court is concerned only with her individual claims. *See Miller v. McGovern*, 907 F.2d 957, 960 (10th Cir. 1990). For instance, to the extent Plaintiff's purported class FDCPA claim sets forth allegations about Defendants improperly obtaining judgments and collecting funds (by garnishment or otherwise), such allegations do nothing to bolster Ruth's individual FDCPA claims (and have not been addressed herein) because the complaint does not allege that such actions were taken against her individually.

### B. State Law Claims

The remainder of the complaint alleges state law causes of action, over which the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). "[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction." *Pinney Dock & Transp. Co. v. Penn. Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999). Having dismissed Plaintiff's FDCPA claims, which were the sole source of original jurisdiction, the Court exercises its discretion under 28 U.S.C. § 1367(c)(3) and declines supplemental jurisdiction over Ruth's state law claims. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("a federal court that has dismissed a plaintiff's federal claims should not ordinarily reach the plaintiff's state-law claims"); *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004) ("when all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed"); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Since this case was removed to federal court, the remaining claims are appropriately remanded to the Summit County Common Pleas Court where they originated.

## III. CONCLUSION

Based upon the foregoing discussion, the Court finds that Plaintiff fails to state a claim for relief under the FDCPA because all such claims alleged in the complaint are barred by the applicable statute of limitations, and Plaintiff fails to establish any meritorious basis for granting relief from the statutory bar. Accordingly, Defendants' motion to dismiss the FDCPA claims on statute of limitations grounds is hereby **GRANTED**. The FDCPA claims provided the sole basis for this Court's original jurisdiction, and, under the circumstances, the Court exercises

24

its discretion to decline supplemental jurisdiction.[18] This case is **REMANDED** to the Summit County Common Pleas Court.

        **IT IS SO ORDERED**.

Dated: March 6, 2009

                           **HONORABLE SARA LIOI**
                           **UNITED STATES DISTRICT JUDGE**

---

[18] Because the Court declines supplemental jurisdiction, it expresses no opinion on any of the arguments raised by Defendants in support of dismissal of Plaintiff's state law claims. The Court's ruling pertains solely to the statute of limitations arguments relative to the alleged FDCPA violations.

25